UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| LATASHA OLIVER, | § § § | |
| Plaintiff, | § § | |
| v. | § § § | Civil Action No. |
| BELL COUNTY, OFFICER BROWN, and OFFICERS DOE 1–100, | § § § § | 6:24-cv-177 |
| Defendants. | § | |

## PLAINTIFF'S COMPLAINT

Plaintiff LATASHA OLIVER files this lawsuit against Defendants BELL COUNTY, OFFICER BROWN, and OFFICER DOE 1–100, and will show:

## I.
## PARTIES

1.  Plaintiff LATASHA OLIVER is a citizen of Illinois and resides in St. Clair County, Illinois.

2.  Defendant BELL COUNTY is a governmental entity in Texas. The County is a recipient of federal funds. The County may be served with process via the Bell County Judge, David Blackburn, whose office is located at 101 E. Central Ave., Belton, Texas 76513.

3.  Bell County's sheriff, Eddy Lange, was, at all relevant times, the policymaker for the County in all matters related to the jail.

4.  Defendant Officer Brown is a jailer who used force and was present while other jailers used force against Latasha Oliver on or about June 17, 2022. Her full name is not known to Plaintiff but is known to Defendants. Defendant Brown was employed by Bell County and acting under color of law at all relevant times. Defendant Brown is sued in her individual capacity only.

Defendant Brown may be served at the Bell County Jail, 2405 S. Loop 121, Belton, Texas 76513 or wherever she may be found.

5. Defendant Officers Doe 1–100 are jailers who used force or were present while other jailers used force against Latasha Oliver on or about June 17, 2022. Their names are not known to Plaintiff but are known to Defendants including Bell County. Defendant Officers Doe were employees of Bell County and acting under color of law at all relevant times. Defendant Officers Doe are sued in their individual capacities only. Defendant Officers Doe may be served at the Bell County Jail, 2405 S. Loop 121, Belton, Texas 76513, or wherever they may be found.

## II.
## JURISDICTION AND VENUE

6. As this case is brought pursuant to 42 U.S.C § 1983, this Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

7. This Court has jurisdiction over Defendants as they reside in the Western District of Texas.

8. This Court has specific *in personam* jurisdiction over Defendants because this case arises out of conduct by Defendants that caused injury to Plaintiff Oliver in Bell County, Texas, which is within the Western District of Texas.

9. Venue of this cause is proper in the Western District pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events or omissions giving rise to Plaintiff's claims occurred in Bell County, which is within the Western District of Texas.

10. This Court has jurisdiction over Plaintiff's alternative supplemental state law claims pursuant to 28 U.S.C. § 1367.

## III.
## FACTS

11. At all relevant times, Oliver was detained in the Bell County Jail while awaiting trial on an unrelated criminal charge.

12. On June 17, 2022, Defendant Officer Brown and Officers Doe approached Oliver while she sat on her assigned blanket in the living room area of her jail dormitory.

13. Oliver was facing away from the officers when one or more of Defendant Officers Doe and/or Brown grabbed the edge of the blanket and began pulling it out from under Oliver.

14. Because Oliver was sitting on the blanket, she began to lose her balance as the surface she was sitting on was suddenly pulled out from under.

15. As Oliver fell back from her seated position, she instinctively reached out to steady herself and grabbed the blanket, which allowed to pull herself forward onto her feet.

16. Oliver was now standing and holding the blanket, but she was still off balance and disoriented.

17. Next, without warning, one or more Defendant Officers Doe and/or Brown used force against Plaintiff Oliver including with knee strikes and by tackling Oliver to the ground.

18. One or more Defendant Officers Doe and/or Brown continued to use force even though Plaintiff Oliver was not resisting or fighting the officers.

19. Defendants then handcuffed Oliver behind her back, face down on the ground.

20. After Oliver was already handcuffed, Officer Brown and/or one or more Defendant Officers Doe yanked Oliver off of the ground by her restrained arms.

21. While Oliver was peacefully and cooperatively walking with the officers out of the dormitory, Officer Brown and one or more Defendant Officers Doe repeatedly pulled Oliver's arms away from her body and in opposite directions against the handcuffs.

22. As a direct and proximate result of the force used, Plaintiff Oliver suffered serious and permanent injuries.

23. In particular, Plaintiff Oliver has limited movement in her right arm and right hand, and they cause constant pain.

24. On information and belief, the force used was solely for the purpose of inflicting unnecessary pain, and not justified by any penological objective. In the alternative, Plaintiff Oliver suffered serious injuries in part from Officer Brown and/or one or more of Defendant Officers Doe failing to use reasonable care while pulling the blanket out from under Oliver and pulling her arms while she was handcuffed.

25. On information and belief, it was Bell County's policy to use unnecessary force on detainees for perceived disobedience.

26. On information and belief, Bell County improperly trained its jailers in the use of force on detainees as a means of punishing perceived disobedience, even though it is highly foreseeable to County policymakers that jailers would routinely encounter this situation and thus cause injuries to detainees (like Oliver) for whom that force would be unconstitutional.

## IV.
## CLAIMS

### A. 42 U.S.C. § 1983 *MONELL* CLAIM—FOURTEENTH AMENDMENT EXCESSIVE FORCE
### (Against Defendant Bell County Only)

27. Plaintiff incorporates by reference all of the foregoing, and alleges as follows:

28. Bell County had the following policies and/or practices in place when Defendants injured Oliver:

- Routine use of force for perceived disrespect or disobedience by detainees, even in situations where such force is not necessary;
- Failing to train officers about the possibility of severe injury caused by uses of

> unnecessary force;
> - Failing to train officers about acceptable use of force against a handcuffed detainee;
> - Using force to punish detainees for perceived disrespect or disobedience; and
> - Using force to inflict pain and injuries on restrained detainees when such force is not necessary.

29. Moreover, Bell County and the individuals' supervisors ratified the jailers use of excessive force against Plaintiff by investigating the incident, affirming the jailers' misconduct, and continuing to approve the excess force despite knowing it caused serious injury to Oliver.

30. The sole policymaker for the activities of law enforcement in the Bell County Jail at all relevant times was the Bell County Sheriff, Eddy Lange.

31. Rather than taking any actions in responsive to this incident, the County, the individuals' supervisors, the Sheriff's Office hierarchy, and Sheriff Lange continue to approve and condone the excess force used against Oliver and other similarly situated inmates.

32. Particularly, on information and belief, the County knows that its officers frequently use excessive force for perceived disrespect or disobedience.

33. Each of the policies delineated above were actually known, constructively known, and/or ratified by Bell County and its policymakers—including the Sheriff—and were promulgated with deliberate indifference to Plaintiff's rights under the United States Constitution.

34. The known and obvious consequences of these policies and practices was that Bell County deputies would be placed in recurring situations in which the constitutional violations described within this complaint would result. Accordingly, these policies also made it highly predictable that the particular violations alleged here, all of which were under color of law, would result.

35. Sheriff Lange, likewise, on information and belief, knew that his officers used excessive force and used force as punishment, and that they would do so against detainees like

Oliver.

36. The policies delineated above were a moving force of Oliver's constitutional deprivations and injuries, and caused her to suffer severe damages.

### B. FOURTEENTH AMENDMENT EXCESSIVE FORCE
### (Against Defendant Officer Brown and Officers Doe)

37. Plaintiff incorporates by reference all of the foregoing, and alleges as follows:

38. Defendant Brown and Officers Doe, while acting under color of law, each used excessive force against Oliver.

39. The force Defendant Brown and Officers Doe purposely or knowingly used against Oliver was objectively unreasonable given the need. Defendants intended to injure Oliver.

40. At no time was Oliver a danger to anyone, and no reasonable officer could have perceived her to pose any serious threat to the security of the jail.

41. Oliver never significantly resisted the officers.

42. As a result of the force Defendants used against Oliver, she suffered injuries.

43. Defendants' use of force was not related to any legitimate penological interest and was not a good faith effort to maintain or restore discipline. At the time Defendants used force, the jail was orderly. Oliver was not disobeying instructions. Instead, each Defendant acted maliciously in an effort to cause harm due to their desire to punish Oliver for sitting on the blanket and/or for perceived disrespect that officers believed Oliver had shown them.

44. In addition and—to the extent that any of the individual defendants did not use excessive force against Oliver—in the alternative, Defendant Brown and Officers Doe were each bystanders who knew that fellow jailers were violating Oliver's constitutional rights, had a reasonable opportunity to prevent the constitutional violations, but chose not to act.

## C. FOURTEENTH AMENDMENT BYSTANDER TO EXCESSIVE FORCE
### (Against Defendant Officer Brown and Officers Doe)

45. Plaintiff incorporates by reference all of the foregoing, and alleges as follows:

46. Defendants Officer Brown and Officers Doe, while acting under color of law, each observed excessive force by other Defendants as described above.

47. Defendant Officer Brown and Officers Doe each observed all of the excessive force inflicted by the others within the group, and watched on (as well as joining in). They each failed to intervene as bystanders to protect Oliver.

48. Defendant Officer Brown and Officers Doe also assembled and formed a joint plan to use excessive force as described above; none of them objected or intervened to stop the excessive force that they all planned together. They each understood that the purpose of the force was to punish Oliver, rather than some other justification.

49. Likewise, Defendant Officer Brown and Officers Doe each observed all of the excessive force inflicted by the others in the group, and watched on (as well as joining in). They each failed to intervene as bystanders to protect Oliver.

50. Likewise, Defendant Officer Brown and Officers Doe assembled and formed a joint plan to use excessive force as described above; none of them objected or intervened to stop the excessive force that they all planned together. They each understood that the purpose of the force was to punish Oliver for sitting on a blanket or for perceived disrespect by Oliver against them, rather than some other justification.

51. Defendant Officer Brown Officers Doe each knew that the other Defendants had no possible justification for using force against Oliver, as they could all see that Oliver was not a threat to anyone. Each of these Defendants' failure to intervene—when they were present at the use of force, had the ability to stop the use of force, and failed to take reasonable measures to

protect Oliver from the other Defendants—proximately caused Oliver to suffer serious injuries.

52. Instead, Defendant Officer Brown and Officers Doe each compounded the harm by inflicting excessive force of their own and declining to stop the use of force. Defendant Officer Brown and Officers Doe's use of force and failure to intervene was objectively unreasonable in light of clearly established law.

### D. IN THE ALTERNATIVE, TEXAS TORT CLAIMS ACT NEGLIGENCE
### (Against Defendant Bell County Only)

53. Plaintiff incorporates by reference all of the foregoing, and alleges as follows:

54. Defendant Bell County is a governmental unit subject to the Texas Tort Claims Act, Texas Civil Practice and Remedies Code § 101.021. Bell County owned, controlled, and possessed the blanket and table.

55. In the alternative to the allegations above that Defendants' intentional use of force caused all of Plaintiff Oliver's injuries, Defendants failure to use reasonable care caused part of Oliver's injuries by using the blanket and/or handcuffs—tangible personal property—and this conduct was negligent. This negligence proximately caused serious injuries to Oliver.

56. The jailers were employees of Bell County and acted in the course of their employment at all relevant times.

57. In this alternative, Bell County proximately caused the injuries to Oliver through the negligent misuse of the blanket and/or handcuffs.

58. No exception to the waiver of Bell County's immunity apply. If Bell County were a private person, it would be liable as a private entity for premises liability and/or negligence relating to its employees' negligent use of the blanket and/or handcuffs.

59. Plaintiff provided notice to Bell County of her claims as required by the Texas Tort Claims Act, and satisfied any other conditions precedent. Further, Plaintiff's claim was obvious

and known to Bell County immediately after Oliver suffered serious injuries, providing actual notice to Bell County.

## V.
## DAMAGES

60. Plaintiff Oliver, suffered and claims the following damages as a proximate result of each Defendants' acts and omissions:

- past and future physical pain and suffering
- past and future mental anguish;
- past and future disfigurement;
- past and future impairment;
- past and future medical expenses;
- past and future loss of earning capacity; and
- attorneys' fees and costs, pursuant to 42 U.S.C. § 1988.

## VI.
## JURY DEMAND

61. Plaintiff respectfully requests jury trial pursuant to FED. R. CIV. P. 48.

## VIII.
## PRAYER FOR RELIEF

62. Accordingly, Plaintiff asks that judgment be awarded against all Defendants for

1)  Compensatory damages;

2)  Punitive damages against the individual defendants only;

3)  Attorneys' fees, including reasonable and necessary expenses, pursuant to 42 U.S.C. § 1988;

4)  Costs of court;

5)  Pre-judgment and post-judgment interest at the highest rate allowable under the law; and

6) All other relief to which Plaintiff is justly entitled.

Respectfully submitted,

**EDWARDS LAW**
603 W. 17TH ST.
AUSTIN, TX 78701
Tel. 512-623-7727
Fax. 512-623-7729

By    /s/ Jeff Edwards
      JEFF EDWARDS
      State Bar No. 24014406
      Lead Counsel
      jeff@edwards-law.com
      LISA SNEAD
      State Bar No. 24062204
      lisa@edwards-law.com
      MICHAEL SINGLEY
      State Bar No. 00794642
      mike@edwards-law.com
      DAVID JAMES
      State Bar No. 24092572
      david@edwards-law.com
      PAUL SAMUEL
      State Bar No. 24124463
      paul@edwards-law.com

**The Traub Law Office, P.C.**
Andrew S. Traub, Esq.
8701 Shoal Creek Boulevard
Suite 401
Austin, TX 78757
Texas Bar No. 00794751
Tel. (512) 246-9191 x1001
Fax (512) 275-3786
andrew@austinaccidentlawyer.com

**ATTORNEYS FOR PLAINTIFF**